AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Virginia

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )   Case No. 1:13SW569
INFORMATION ASSOCIATED WITH  )
█████████████ and  )
████████████████████ THAT IS STORED  )
AT PREMISES CONTROLLED BY LAVABIT, LLC  )

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ Texas _____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____
                                                                                              *(not to exceed 14 days)*
☐ in the daytime  6:00 a.m. to 10 p.m.      ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge The Honorable T. Rawles Jones, Jr. .
                                                              *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30)*.
                                      ☐until, the facts justifying, the later specific date of _____.

Date and time issued:  August 1, 2013                     /s/Thomas Rawles Jones, Jr.
                                      at 11:30 am                _____
                                                                                    *Judge's signature*

City and state:   Alexandria, Virginia          A TRUE COPY, TESTE:
                                                              The Honorable T. Rawles Jones, Jr., U.S. Magistrate Judge
                                                              CLERK, U.S. DISTRICT COURT *Printed name and title*

                                                              ████████████████████████
                                                              B███████████████████
                                                              DEPUTY CLERK

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with  and ███████████████ that is stored at premises owned, maintained, controlled, or operated by Lavabit, LLC, a company headquartered at ██████████████, Dallas, Texas, 75204.

13

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Lavabit, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Lavabit, LLC (Lavabit), including any e-mails, records, files, logs, or information that have been deleted but are still available to Lavabit, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Lavabit is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

d.     All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

14

For each of the categories above, if Lavabit is able to provide decrypted content, it must do so. If Lavabit is unable to provide decrypted content, Lavabit must provide any and all information necessary to decrypt the content, including, but not limited to public and private keys and algorithms.

**II.   Information to be seized by the government**



b.      Evidence of the identities of the users of the account and co-conspirators and others associated with the account and the criminal activities facilitated by the use of the account;

c.      Evidence of the location of the users of the account and co-conspirators and others associated with the account, and;

d.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

AO 106 (Rev. 06/09) Application for a Searc.    .rrant

# UNITED STATES DISTRICT COURT

### for the
Eastern District of Virginia

AUG – 1 2013

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*
INFORMATION ASSOCIATED WITH
████████████████ and
██████████████ THAT IS STORED
AT PREMISES CONTROLLED BY LAVABIT, LLC

)
)
)
)
)
)

Case No. 1:13SW569

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the         Northern         District of         Texas         , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. §§ ████████████ | ███████████████████████████████████ |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:
AUSA ████████████████

███████████████████████
*Applicant's signature*

███████████ FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     08/01/2013

City and state: Alexandria, Virginia

/s/Thomas Rawles Jones, Jr.
*Judge's signature*

The Honorable T. Rawles Jones, Jr., U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | Case No. 1:13SW569 **Filed Under Seal** |

AUG - 1 2013

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Lavabit, an electronic communications service provider and/or a remote computing service, not to notify any person (including the subscribers or customers of the account(s) listed in the search warrant) of the existence of the attached search warrant until further order of the Court.

The Court determines that there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Lavabit shall not disclose the existence of the attached search warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that Lavabit may disclose the attached search warrant to an attorney for Lavabit for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

_8/1/13_
Date

/s/Thomas Rawles Jones, Jr.
The Honorable T. Rawles Jones, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN THE MATTER OF THE SEARCH OF )

INFORMATION ASSOCIATED WITH )
███████████████████████ and )
THAT IS STORED AT PREMISES )
CONTROLLED BY LAVABIT, LLC )
)
)
)

UNDER SEAL
(Local Rule 49(B))
No. 1:13sw569

AUG - 1 2013

## ORDER TO SEAL

The UNITED STATES, pursuant to Local Rule 49(B) of the Local Criminal Rules for the United States District Court for the Eastern District of Virginia, having moved to seal the application for a search warrant, the search warrant, the affidavit in support of the search warrant, the Motion to Seal, and proposed Order in this matter; and

The COURT, having considered the government's submissions, including the facts presented by the government to justify sealing; having found that revealing the material sought to be sealed would jeopardize an ongoing criminal investigation; having considered the available alternatives that are less drastic than sealing, and finding none would suffice to protect the government's legitimate interest in concluding the investigation; and having found that this legitimate government interest outweighs at this time any interest in the disclosure of the material; it is hereby

ORDERED, ADJUDGED, and DECREED that, the application for search warrant, the search warrant, the affidavit in support of the search warrant, Motion to Seal, and this Order be sealed until further Order by the Court. It is further ordered that law enforcement officers may serve a copy of the warrant on the occupant of the premises as required by Rule 41 of the Fed. R. of Crim. Proc.

Date: 8/1/13
Alexandria, Virginia

/s/Thomas Rawles Jones, Jr.
The Honorable T. Rawles Jones, Jr.
United States Magistrate Judge

AO 83 (Rev. 06/09)  Summons in a Criminal Case

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

United States of America
v.
IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCAITED WITH
▇▇▇▇▇▇▇▇▇▇▇▇▇▇and
▇▇▇▇▇▇▇▇▇▇THAT IS STORED
AT PREMISES CONTROLLED BY LAVABIT, LLC
*Defendant*

)
)
)
)
)
)
)

Case No.        1:13sw00569

UNDER SEAL

## SUMMONS IN A CRIMINAL CASE

**YOU ARE SUMMONED** to appear before the United States district court at the time, date, and place set forth
below to answer to one or more offenses or violations based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☒ Order of Court

| | |
|---|---|
| Place:    401  Courthouse Square<br>Alexandria, VA  22314 | Courtroom No.:        301 |
| | Date and Time:        8/27/2013 @ 11:00 a.m. |

This offense is briefly described as follows:

See attached Order

Date:        8/23/2013

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
*Issuing officer's signature*

▇▇▇▇▇▇▇ Deputy Clerk
*Printed name and title*

I declare under penalty of perjury that I have:

☐ Executed and returned this summons        ☐ Returned this summons unexecuted

Date:

*Server's signature*

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

AUG 2 3 2013

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCAITED WITH
█████████████████████ and
███████████████████████ THAT
IS STORED AT PREMISES
CONTROLLED BY LAVABIT, LLC

)   **UNDER SEAL**
)
)   No. 1:13SW569
)
)
)
)

## ORDER TO COMPLY WITH SEARCH WARRANT, OR, ALTERNATIVELY, SHOW CAUSE

Upon motion of the United States pursuant to Title 18, United States Code, Section 401, good cause having been shown, IT IS HEREBY ORDERED:

1.    Ladar Levison, the owner and operator of Lavabit LLC, an electronic communications service provider, is directed to comply with the search warrant issued on August 1, 2013, No. 1:13SW569, by no later than 4:00 p.m. Eastern Standard Time on August 26, 2013.

2.    If Mr. Levison and Lavabit LLC have not complied with the search warrant by no later than 4:00 p.m. Eastern Standard Time on August 26, 2013, Mr. Levison shall appear before this Court on August 27, 2013, at 10:00 a.m., at which time he shall show cause why Lavabit LLC has failed to comply with the search warrant entered on August 1, 2013, in this matter and why this Court should not hold Mr. Levison and Lavabit LLC in contempt for its disobedience and resistence to this lawful order;

2.    The Clerk's Office shall issue a summons for the appearance of Mr. Levison on August 27, 2013, at 10:00 a.m.  The Clerk's Office shall provide the Federal Bureau of Investigation with a certified copy of the summons for service on Mr. Levison and Lavabit LLC.

3.    The Federal Bureau of Investigation shall serve the summons on Mr. Levison

together with a copy of the Motion of the United States for an Order to Show Cause and a certified copy of this Order.

4.     The sealing and non-disclosure provisions related to the search warrant issued on August 1, 2013, shall remain in full force and effect.  Mr. Levison and Lavabit LLC shall not disclose the existence of these applications, motions, and court orders, including this Order to Show Cause, to the subscriber or to any other persons unless otherwise authorized to do so by court order, except that Lavabit LLC may disclose the orders to an attorney for the purpose of obtaining legal advice regarding these orders.

5.     This Order, the Motion of the United States for an Order to Show Cause, and any subsequent pleadings and proceedings regarding this matter shall be placed under seal until further order of this Court.

Entered in Alexandria, Virginia, this 23ʳᵈ day of August, 2013

/s/Thomas Rawles Jones, Jr.
_____
The Honorable Thomas Rawles Jones, Jr.
United States Magistrate Judge

A True Copy, Teste:

B:

- 2 -

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

AUG 23 2013

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCAITED WITH ██████████████████ and ████ THAT IS STORED AT PREMISES CONTROLLED BY LAVABIT, LLC | **FILED UNDER SEAL**<br><br>No. 1:13SW569 |

## MOTION OF THE UNITED STATES
## FOR AN ORDER TO COMPEL AND, ALTERNATIVELY, TO SHOW CAUSE

The United States, through the undersigned counsel, pursuant to Title 18, United States Code, Section 401, hereby moves for the issuance of an order directing Ladar Levison, the owner and operator of Lavabit LLC, an electronic communications service provider, to comply with the search warrant entered on August 1, 2013, no later than 4:00 p.m. Eastern Standard Time on August 26, 2013. If that order is not met, the United States moves requests the Court require Lavabit LLC to show cause why it has failed to comply with the search warrant and, as a result, why this Court should not hold Mr. Levison and Lavabit LLC in contempt for its disobedience and resistence to these lawful orders and impose sanctions. The United States further requests that the Court convene a hearing on this motion on August 27, 2013, at 10:00 a.m., and issue a summons directing Mr. Levison to appear before this Court on that date. If Lavabit LLC has complied with the search warrant no later than 4:00 p.m. Eastern Standard Time on August 26, 2013, the hearing could be removed from the docket. In support of this motion, the United States represents:

1.    The United States is conducting a criminal investigation ██████████████████



2.

On or about June 8, 2013, a grand jury subpoena was served on Lavabit LLC through Ladar Levison for billing and subscriber information. Mr. Levison provided that information. On June 10, 2013, the United States obtained an order pursuant to 18 U.S.C. § 2703(d) directing Lavabit LLC to provide, within ten days, additional records and information. Mr. Levison received that order on June 11, 2013. Mr. Levison responded by mail, which was not received by the government until June 27, 2013. Mr. Levison provided very little of the information sought by the June 10, 2013 order.

3.   On August 1, 2013, the United States obtained and served a search warrant on Lavabit, LLC, through Mr. Levison, requiring him to produce information associated with two email accounts. A copy of that search warrant and associated paperwork is attached hereto as Attachment A.

4.   On or about August 8, 2013, Mr. Levison shut down Lavabit's operations.

5.   On August 14, 2013, the United States contacted Mr. Levison's counsel asking for compliance with the search warrant. Mr. Levison's counsel replied that he would talk to Mr. Levison about "getting most of the information sought ASAP."

- 2 -

6.      On August 15 and August 16, the United States sent follow-up emails to Mr. Levison's counsel attempting to ascertain whether or not Mr. Levison intended to comply with the search warrant.

7.      On August 20, nearly three weeks after the search warrant was served on Mr. Levison, the United States sent his counsel an email requesting compliance with the search warrant no later than August 21, 2013.

8.      On August 21, 2013, Mr. Levison's counsel replied, stating that it was "unlikely that the process will be completed before Monday," and that Mr. Levison needed "8 to 14 hours of engineering time" to collect the material responsive to the search warrant. This additional time appears to be necessitated by Mr. Levison's decision to shut down Lavabit's services, which he made nearly one week after being served with the search warrant.

9.      On August 22, 2013, the United States sent an email to Mr. Levison's counsel asking for compliance no later than the close of business on Friday, August 23, 2013, and notifying counsel that if his client did not assure the United States that he would comply by that time, the United States would seek a court order compelling compliance no later than the close of business on Friday, August 23, 2013.

10.     Mr. Levison's counsel responded that Mr. Levison was "optimistic that he can get this done by Monday and we will work diligently to get that done. If you want to waste the court's time with a motion to accelerate production by one business day that is your call."

11.     The United States has diligently attempted to secure Lavabit's compliance with the attached search warrant. Yet, after more than three weeks, Lavabit has provided no assurance that production will occur in a timely fashion, if ever. The United States is legally entitled to

compliance with the search warrant, which was duly issued by this Court.

12.     The proposed order is necessary in light of Lavabit LLC's history of failing to abide by court orders. With respect to an order requiring a Pen Register / Trap and Trace Device, as well as another search warrant related to this investigation, the United States needed orders to compel before Lavabit LLC complied with legal process. In fact, Lavabit LLC has incurred fines of $10,000, imposed by the Honorable Claude M. Hilton, associated with its failure to comply with those court orders. Additionally, Mr. Levison has given numerous public statements about these matters, in violation of sealing orders issued by the court. Based on Mr. Levison's repeated failures to abide by court orders, the proposed order is necessary in order to ensure compliance with the search warrant.

12.     The United States requests that the Court enter the attached proposed order directing Mr. Levison to comply with the search warrant no later than 4:00 p.m. Eastern Standard Time on August 26, 2013. If Mr. Levison has not complied as directed, the proposed order would require Mr. Levison and Lavabit to show cause why Lavabit LLC has failed to comply with the search warrant and why, therefore, he should not be held in contempt and sanctioned. The United States requests that this show cause hearing be scheduled for August 27, 2013, at 10:00 a.m., and that a summons be issued directing Mr. Levison to appear before this Court on that date. The United States requests this order and hearing because ensuring compliance with lawfully issued court orders is not a "waste of time."

13.    The August 1 search warrant, including the documents, the existence of the warrants, the subject matter of the search warrants, and the target(s) of the investigation remain under seal.  In addition, this Court issued an order providing that Lavabit LLC shall not disclose the existence of the search warrant to the subscriber or to any other persons unless otherwise authorized to do so by court order, except that Lavabit LLC may disclose the orders to an attorney for the purpose of obtaining legal advice regarding these orders.  The United States requests that these documents remain under seal, that the non-disclosure provisions of the orders remain in effect, and that this motion and order and any subsequent pleadings and/or proceedings regarding this motion also be sealed.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:   

United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700

A True Copy, Teste:

By                                     
Deputy Clerk

- 5 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ████████████████ and ████ THAT IS STORED AT THE PREMISES CONTROLLED BY LAVABIT, LLC | ) **FILED UNDER SEAL** <br> ) <br> ) Case No.: 1:13sw00569 <br> ) <br> ) <br> ) |

## CONSENT MOTION FOR WAIVER OF PERSONAL APPEARANCE

Ladar Levison, with the consent of the Government, submits this Motion to Waive his Personal Appearance for the hearing to be held in this Court on Tuesday, August 27, 2013, at 11:00 a.m. The Government does not object to this request for waiver of personal appearance. Mr. Levison is working diligently to comply with the outstanding search warrant and that effort would be hindered if he were compelled to appear.

**LAVABIT LLC**
**By Counsel**

Dated: August 26, 2013

/s/ _____



Laurin H. Mills (VSB No. 79848)
David A. Warrington (VSB No. 72293)
Paris R. Sorrell (VSB No. 80953)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Telephone: ████████
Facsimile: ████████

Jesse R. Binnall, VSB# 79292
Bronley & Binnall, PLLC
10387 Main Street, Suite 201
Fairfax, Virginia 22030

Telephone: 
Facsimile:

*Counsel for Lavabit, LLC*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2013, this Request for Waiver of Personal Appearance was hand delivered to the person at the addresses listed below:

Senior Litigation Counsel
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

/s/

Laurin H. Mills (VSB No. 79848)
David A. Warrington (VSB No. 72293)
Paris R. Sorrell (VSB No. 80953)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Telephone:
Facsimile:

Jesse R. Binnall, VSB# 79292
Bronley & Binnall, PLLC
10387 Main Street, Suite 201
Fairfax, Virginia 22030
Telephone
Facsimile

*Counsel for Lavabit, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
███████████████ and ███████
███████████████ THAT
IS STORED AT THE PREMISES
CONTROLLED BY LAVABIT, LLC

) **FILED UNDER SEAL**
)
) Case No.: 1:13sw00569
)
)
)
)

## NOTICES OF APPEARANCE

To the clerk of court and all parties of record. Please enter our

appearances in the above captioned case as counsel for Lavabit, LLC.

Date: August 26, 2013

/s/ _____
Laurin H. Mills (VSB No. 79848)
David A. Warrington (VSB No. 72293)
Paris R. Sorrell (VSB No. 80953)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Telephone: ███████████████
Facsimile: ███████████████
███████████████████████████

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AUG 27 2013

IN THE MATTER OF THE SEARCH OF      )
INFORMATION ASSOCIATED WITH         )
███████████████████████████ AND     )
███████████████████████ THAT        )
IS STORED AT THE PREMISES CONTROLLED )
BY LAVABIT, LLC                     )

**UNDER SEAL**

Case No. 1:13sw569

## ORDER

Unless the government advises the court and counsel for respondents by August 28, 2013, at 5:00 p.m. that it is satisfied with respondents' compliance with the search warrant herein, respondents shall appear before Judge Hilton on August 29, 2013, at 10:00 a.m. and show cause why they should not be held in contempt.

It is so ORDERED.

/s/Thomas Rawles Jones, Jr.

Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
August 27, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
██████████████████ and
██████████████████ THAT
IS STORED AT THE PREMISES
CONTROLLED BY LAVABIT, LLC

) **FILED UNDER SEAL**
)
) Case No.: 1:13sw00569
)
)
)
)

## UNOPPOSED MOTION TO POSTPONE HEARING

Ladar Levison, Lavabit.com, and the Government jointly move to postpone the hearing currently scheduled for Thursday, August 29, 2013, at 10:00 a.m.

### FACTS

A hearing was held in this matter before United States Magistrate Judge Thomas Rawles Jones on August 27, 2013, for Ladar Levison/Lavabit to show cause as to why they should not be held in contempt for failing to respond to an outstanding search warrant relating to email accounts believed to be related to an important ongoing investigation.

Counsel for Mr. Levison/Lavabit explained the difficulties in responding and represented that compliance would likely occur in whole or in part later in the day on August 27, 2013. Judge Jones ordered that if Mr. Levison/Lavabit had not complied with the search warrant by the end of the day on Wednesday, August 28, 2013, Mr. Levison (who lives in the Dallas, Texas area) and counsel should plan to appear at a status conference on Thursday, August 29, 2013, at 10:00 a.m. to explain the inability to comply.

At approximately 2:00 p.m. on Wednesday, August 27, 2013, Levison/Lavabit produced all of the unencrypted information in their possession responsive to the warrant and an outstanding grand jury subpoena. Counsel for Levison/Lavabit then contacted Government counsel to confirm the receipt of the material and to inquire whether the Government also wanted encrypted information produced. Encrypted information is generally useless unless the recipient has the password to decrypt the information. The Government responded that it would like the encrypted information produced as well.

Mr. Levison/Lavabit believe that they can produce the encrypted information by 5:00 p.m. central time on Friday, August 30, 2013. The slight delay is due to the fact that Lavabit is a single employee organization and ▉

## ARGUMENT

Given the importance of this investigation, the parties jointly believe that it is in the best interest of parties, the administration of justice and the conservation of judicial resources, for Mr. Levison/Lavabit to focus on producing the requested encrypted information by Friday, at 5:00 p.m. central time. For these reasons, the parties jointly request that the status conference be postponed until Tuesday, September 3, 2013, at 10:00 a.m. If the encrypted information is received as promised, the need for a status conference could be rendered moot.

WHEREFORE, the Court should enter the attached order postponing the status conference until September 3, 2013, at 10:00 a.m.

**LAVABIT LLC**
**By Counsel**

Dated: August 28, 2013

/s/ _____

Laurin H. Mills (VSB No. 79848)
David A. Warrington (VSB No. 72293)
Paris R. Sorrell (VSB No. 80953)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Telephone: ████████████
Facsimile: ████████████

████████████████████████

Jesse R. Binnall, VSB# 79292
Bronley & Binnall, PLLC
10387 Main Street, Suite 201
Fairfax, Virginia 22030
Telephone: ████████████
Facsimile: ████████████

████████████████████████

*Counsel for Lavabit, LLC*

████████████████

United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
████████████████ and ████ THAT
IS STORED AT THE PREMISES
CONTROLLED BY LAVABIT, LLC

) FILED UNDER SEAL
)
) Case No.: 1:13sw00569
)
)
)
)

## ORDER ON UNOPPOSED MOTION TO POSTPONE HEARING

The Court, having considered the Unopposed Motion to Postpone Hearing and the entire record herein believes that said motion is well taken and should be and is GRANTED.

The hearing scheduled for August 29, 2013 is postponed until September 3, 2013, at 10:00 a.m.  If the Government believes that compliance with the outstanding warrant has been achieved prior to that time, Mr. Levison and Lavabit shall be excused and counsel for the Government shall appear at the hearing and inform the Court that the need for a status hearing is moot.

SO ORDERED this 28th day of August, 2013.

_____/s/_____
Claude M. Hilton
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

2013 DEC 19  A 9: 13

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

In re: Search Warrant Issued to Lavabit, LLC    )
                                                 )
                                                 )    Case No. ALEXSW0569
                                                 )
                                                 )    UNDER SEAL
                                                 )
                                                 )
_____ )

## CONSENT MOTION FOR EXTENSION OF TIME

The United States of America, by and through its undersigned attorneys, hereby requests that the Court extend the government's deadline for the filing of a responsive brief in the above-captioned matter from December 24, 2013, to January 10, 2014.  In support of the motion the United States declares as follows:

1.    On December 13, 2013, Lavabit and Ladar Levison (hereinafter "Lavabit") filed a motion to unseal records filed in the above-captioned matter.  The government received a copy of the motion from the Clerk's Office Monday, December 16.  Pursuant to EDVA Local Rule 12, the government's response is due December 24, 2013.

2.    After receiving a copy of the motion from the Court, counsel for the United States contacted counsel for Lavabit to discuss the subject of the motion.  Based on that conversation, the government believes the Parties may be able to come to an agreement on unsealing so that they could present the Court with a joint proposal and obviate the need for additional litigation. However, due to the impending holiday season and the periodic unavailability of government counsel as well as Mr. Levison, the government does not believe the Parties will be able to reach agreement prior to December 24, 2013.

3.      Thus, to avoid unnecessary litigation, the government requests that the Court extend the time for its reply to January 10, 2013.  The government believes that will give the Parties sufficient time to craft a joint proposal, or, if the Parties are unable to come to an agreement, for the government to file a response.  The government consulted with counsel for Lavabit and counsel has consented to the extension of time.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:   █████████████████████████

Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2013, I sent the foregoing via electronic mail to:

Jesse Ryan Binnall
████████████
Bronley & Binnall, PLLC
10387 Main Street
Fairfax, VA 22030-0000

████████████████████

Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: ████████

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: Search Warrant Issued to Lavabit, LLC )   Case No. 1:13 SW 569
 )
 )
 )
 )
 )
 )
 )

## [PROPOSED] ORDER

Upon motion of the government, the Court hereby extends the deadline for the filing of the government's response to the December 13, 2013 Motion filed in this matter to January 10, 2014.

December ___, 2013
Alexandria, VA

_____
Hon. T. Rawles Jones, Jr.
United States Magistrate Judge



# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES AUTHORIZING THE USE
OF A PEN REGISTER/TRAP
AND TRACE DEVICE ON AN
ELECTRONIC MAIL ACCOUNT

**FILED UNDER SEAL**

No. 1:13EC297

IN RE: APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AN ORDER PURSUANT TO 18
U.S.C. § 2705(b)

No. 1:13SW569



## MOTION FOR UNSEALING OF SEALED COURT RECORDS AND REMOVAL OF NON-DISCLOSURE ORDER AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

Lavabit, LLC ("Lavabit") and Mr. Ladar Levison ("Mr. Levison") (collectively "Movants") move this Court to unseal the filings concerning the Government's attempt to obtain the content and records relating to two email accounts and lift the non-disclosure order imposed upon Mr. Levison. Specifically, Movants request the unsealing of:

(1)  all orders and documents filed in this matter before the Court's issuance of the August 1, 2013, 2705(b) Order ("2705(b) Order");

(2)  all orders and documents filed in this matter after the issuance of the 2705(b) Order;

(3)  all search and seizure warrants issued before or after issuance of the 2705(b) Order;

(4)  all transcripts from any hearing relating to the 2705(b) Order or search and seizure warrants;

(5)   all documents filed in connection with such orders or requests for such orders; and

(6)   the email messages between Mr. Levison or Lavabit and the target of the investigation (collectively, the "sealed documents").

Movants request that all of the sealed documents be unsealed and made public as quickly as possible, with only those redactions necessary to secure information that the Court deems, after review, to be properly withheld.

## BACKGROUND

Lavabit was formed in 2004 as a secure and encrypted email service provider and ceased operating on August 8, 2013.  Prior to August 8, 2013, Lavabit provided email service to roughly 400,000 users worldwide.  Lavabit's corporate philosophy is user anonymity and privacy.  To achieve user anonymity and privacy, Lavabit employed multiple encryption schemes, each of which utilized complex access keys.  When a Lavabit user chose to use encryption, two Elliptical Curve Cryptography ("ECC") keys were generated.  One was a public key used to encrypt incoming messages when they were stored on the Lavabit server.  Once encrypted, the message could only be decrypted by the owner of the account with the second private ECC key.  This private key was protected by Advanced Encryption Standard ("AES"), which used a secret passphrase to encrypt/decrypt a ciphered message.  The ciphered message is a user's private key and the secret passphrase, which were hashed together.  To ensure maximum privacy, passwords were hashed using the Secure Hash Algorithm ("SHA") methodology.  Lavabit took the password, the account name and a cryptographic salt, combined them and hashed them

2

three times. The first hash was used as secret passphrase for AES and the third hash was stored on password database and used to verify that users entered their password correctly. To protect messages in route between servers over the Internet, a Secure Sockets Layer ("SSL") encryption key was used.

On August 1, 2013, this Court issued a Search and Seizure Warrant directing Movants to disclose all information necessary to decrypt communications sent to or from and data stored or otherwise associated with two Lavabit e-mail accounts ("Email Accounts"), including all public or private keys necessary to decrypt the content of messages associated with those accounts. This Court also issued a 2705(b) Order precluding the Movants from notifying any person of the search and seizure warrant, or the 2705(b) Order, except that Lavabit was permitted to disclose the search warrant to an attorney for legal advice.

As a result of the warrant, Mr. Levison located and identified all records of any communications between the subject accounts and himself or Lavabit. These email messages were solely related to technical and support questions from the target to Lavabit.

The search and seizure warrant and the 2705(b) Order are a continuation of previous orders related to additional email addresses. The vast majority of documents, transcripts and court orders relating to the first search warrant issued in this case have been made public.

## ARGUMENT

The 2705(b) Order violates Lavabit's and Mr. Levison's First Amendment rights. The public has a presumption of access to judicial records, including the search and seizure warrant and 2705(b) Order. The Government cannot overcome this presumption, because it did not examine reasonable alternatives to a blanket gag order. The 2705(b) Order constitutes an unconstitutional prior restraint and content-based restriction on free speech by prohibiting public discussion of an entire topic based on its subject matter.

Lavabit and Mr. Levison have become embroiled in this debate, and Mr. Levison wishes to share his unique perspective with the world. It is in the interests of the Movants and the Government that the documents in this matter not be shrouded in secrecy and used to further unjustified surveillance activities and to suppress public debate.

## I.    STORED COMMUNICATIONS ACT DOES NOT PERMIT NON-DISCLOSURE ORDERS

The Stored Communications Act ("SCA") authorizes a court to issue an order forbidding an electronic communications service provider from notifying any other person of the existence a warrant, subpoena, or court order, but only if the Court has reason to believe that notification will result in (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3)

destruction or tampering with evidence; (4) intimidating of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial. 18 U.S.C. §§ 2705(b)(1)-(5). The 2705(b) Order in this case violates Mr. Levison's freedom of speech rights under the First Amendment.

None of these circumstances support the 2705(b) Order issued in this case. Unsealing the search and seizure warrant, the transcript and all other documents relating to this warrant, with appropriate redactions, will not endanger the life or physical safety of an individual, will not result in flight from prosecution (the target fled the United States months ago and is evading prosecution), destruction or tampering with evidence, or intimidation of potential witnesses. In light of this Court unsealing the records relating to the previous warrant and subpoenas, the argument that disclosure would seriously jeopardize any investigation is unfounded. Under the SCA, there are no grounds to support the continuation of the 2705(b) Order.

### a. The Nondisclosure Order is a Content-Based Restriction on Mr. Levison's Free Speech That Fails Strict Scrutiny, and Therefore is Unconstitutional

The notice preclusion order forbids Mr. Levison to disclose the existence of the 2705(b) Order, the search and seizure warrant or the underlying investigation to any other person. This naked prohibition is a content-based regulation of speech. *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001). It is content-based because it precludes Mr. Levison from speaking about an entire topic because of its subject matter, namely the search and

seizure warrant and the underlying criminal investigation. *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 537 (1980) ("The First Amendment's hostility to content-based regulation extends…to prohibition of public discussion of an entire topic").

A content-based restriction on free speech is constitutional only if it satisfies the most searching form of review: strict scrutiny. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 403 (1992). To survive strict scrutiny review, a government entity must show that a restriction on free speech is "narrowly tailored to promote a compelling Government interest," *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000), and that there are no "less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve," *Reno v. ACLU*, 521 U.S. 844, 874 (1997); *see also id.* The non-disclosure orders in this matter are content-based restrictions that are not narrowly tailored to achieve a compelling state interest, and are therefore unconstitutional.

The Government has a compelling interest in maintaining the integrity of its criminal investigations. However, to sustain a content-based restriction on Mr. Levison's speech, the Government cannot simply "posit the existence of the disease sought to be cured. Rather it must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 664 (1994) (internal quotation marks and citations omitted). The Government cannot meet that burden here because it cannot

demonstrate that any actual harm will occur as a result of unsealing these documents.

Mr. Levison has spoken publicly about his misgivings and opposition to the manner in which the Government compelled him to turn over his SSL keys. An order that bars Mr. Levison from saying anything whatsoever about his misgivings as related to this particular warrant is not narrowly tailored to achieve the Government's objective, which is ostensibly to protect its criminal investigation, nor is it the least restrictive alternative to achieve that objective. Mr. Levison has spoken out regarding his experience and concerns without making any reference to the target ██████████████████████ ████████████████ The broad nondisclosure order in this matter poses "the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to . . . manipulate the public debate through coercion rather than persuasion." *Turner Broadcasting*, 512 U.S. at 641.

Moreover, the nondisclosure order has harmed Mr. Levison's business. To protect Lavabit, which caters to thousands of international clients, Mr. Levison needs some ability to express his concerns, garner support for his cause, and take precautionary steps to ensure that Lavabit remains a truly secure network. He is unable to accomplish these goals if he is gagged from voicing his concerns—even in a general, cursory way—about how the Government is seeking information from Lavabit in the underlying investigation. This Court unsealed a majority of the documents in the earlier

7

search warrant case. However, there are still documents under seal that Mr. Levison cannot speak about, and this constitutes a restraint on his speech.

**b. The Nondisclosure Order Is an Unconstitutional Prior Restraint**

Besides restricting content, there can be no dispute that the 2705(b) Order is a prior restraint on speech because it bars Mr. Levison from speaking about these proceedings with any other person. *See Alexander v. United States,* 509 U.S. 544, 550 (1993); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150-151 (1969); *Staub v. City of Baxley,* 355 U.S. 313, 322 (1958). By definition, a prior restraint is an immediate and irreversible sanction because it "freezes" speech, which is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). "Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity," and "carries a heavy burden of showing justification." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971) (internal quotation marks omitted); *Capital Cities Media, Inc. v. Toole,* 463 U.S. 1303, 1305 (1983); *Carroll v. Princess Anne,* 393 U.S. 175, 181 (1968); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963).

The Government's interest in the integrity of its investigation does not automatically supersede First Amendment rights. *See Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 841 (1978) (holding the confidentiality of judicial review insufficient to justify encroachment on the freedom of speech). Indeed, even in the very serious context of national security, the Supreme Court has found that a prior restraint is permissible

8

only if the speech will "surely result in direct, immediate, and irreparable harm to our Nation or its people." *New York Times v. United States (Pentagon Papers)*, 403 U.S. 713, 730 (1971) (per curium) (Stewart, J. joined by White, J., concurring).[1]

Further, the 2705(b) Order is not limited in time.  The order states, "that Lavabit shall not disclose the existence of the attached search warrant, or this Order of the Court . . . unless and until otherwise authorized to do so by the Court . . ."  This language operates as a perpetual restraint on Mr. Levison's ability to speak about this subject.  *See In re Sealing & Non-Disclosure of Pen/Trap*, 562 F. Supp. 2d 876 (S.D. Tex. 2008) (stating that 18 U.S.C. 2705(b) does not permit a gag order of indefinite duration, because it constitutes a permanent prior restraint on speech).  Mr. Levison's First Amendment rights cannot be permanently supplanted.  *See id.* (finding that in the southern

---

[1] The Stewart-White concurrence is the holding of the case, because of the six Justices who concurred in the judgment, Justices Stewart and White concurred on the narrowest grounds. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds") (internal quotation omitted); accord, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 764 n. 9 (1988). Justices Black and Douglas would clearly have refused to enjoin publication even if the Government had met Stewart's test. *See, e.g., New York Times*, 403 U.S. at 715 (Black, J., concurring); id. at 720 (Douglas, J., concurring). Justice Brennan also would likely have held more broadly. "[T]he First Amendment tolerates absolutely no prior judicial restraints of the press predicated on upon surmise or conjecture that untoward consequences may result. . . . [O]nly governmental . . . proof that publication must inevitably, directly and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order.  In no event may mere conclusions be sufficient: for if the Executive Branch seeks judicial aid in preventing publication, it must inevitably submit the basis upon which that aid is sought to scrutiny by the judiciary." Id. at 726-27 (Brennan, J., concurring).

district of Texas, 99.7% of orders containing language "sealed under further order of the court" are still under seal even after the case has ended). The indefinite duration of this 2705(b) Order violates the First Amendment.

Due to the publicity surrounding Lavabit's closing and the subsequent unsealing of other documents, Lavabit's users know that the system has been compromised. However, Lavabit has a right to disclose the full scope of the Government's requested access to Lavabit's data and keys to its customers and the general public. Therefore the 2705(b) Order should be lifted to provide Mr. Levison the ability to ensure the value and integrity of Lavabit. Lavabit's customers have a right to know the full scale of the potential intrusion upon their privacy.

The unsealing of these legal documents will not directly or irreparably harm the Government's criminal investigations ██████████ Mr. Levison's decision to shut down Lavabit has received extensive media coverage, and ██ ██████ cannot use ██ email account since the service has been shut down. *See In re a 18 U.S.C. § 2703(d) Order issued to Google, Inc. on June 10, 2011,* 2012 U.S. Dist. LEXIS 25770, *2 (E.D. Va. 2012) (Jones, Jr., J.) (stating that the Government's concern of confidentiality is moot, because the use of the Government's tools in this matter have been widely publicized).

## II.   THE LAW SUPPORTS THE RIGHT OF PUBLIC ACCESS TO THE SEALED DOCUMENTS

Despite the lack of statutory authority, the 2705(b) Order, the search warrant and all related documents were filed under seal. The sealing of judicial records imposes a limit on the public's right of access, which derives from two

sources, the First Amendment and the common law. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004); *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (press and public have a First Amendment right to attend a criminal trial); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 2 (1986) (right of access to preliminary hearing and transcript).

### a. The Common Law Right Of Access Attaches To The Search Warrant

For a right of access to a document to exist under either the First Amendment or the common law, the document must be a "judicial record." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63–64 (4th Cir. 1989). The Fourth Circuit has held that § 2703(d) orders and subsequent orders issued by the court are judicial records because they are judicially created. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013) ("*Twitter*"). The 2705(b) Order in the present case was issued pursuant to 18 U.S.C. § 2703(d) and can properly be defined as a judicial record. The Fourth Circuit has held that the common law presumption of access attaches to such documents. *Twitter*, 707 F.3d at 291.

To overcome the common law presumption of access, a court must find that there is a "significant countervailing interest" in support of sealing that outweighs the public's interest in openness. *Twitter*, 707 F.3d at 293. Under the common law, the decision to seal or grant access to warrant papers is within the discretion of the judicial officer who issued the warrant. *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005). If a

11

judicial officer determines that full public access is not appropriate, she must consider alternatives to sealing, which may include granting some public access or releasing a redacted version of the documents. *Id.* The Court did not consider an alternative to sealing all the documents.

### b.  There Is No Statutory Authority To Seal The § 2705(d) Documents

There are no provisions in the SCA that mention the sealing of orders or other documents.  By contrast, the Pen/Trap Statute authorizes electronic surveillance and directs that pen/trap orders be sealed "until otherwise ordered by the court".  18 U.S.C. §§ 3121-27.  Similarly, the Wiretap Act, another surveillance statute, expressly directs that applications and orders granted under its provisions be sealed.  18 U.S.C. § 2518(8)(b).  The SCA's failure to provide for sealing is not a congressional oversight.  Rather, Congress has specifically provided for sealing provisions when it desired.  Where Congress includes particular language in one section of a statute but omits it in another, it is generally assumed that Congress acted intentionally.  *Keene Corp. v. United States,* 508 U.S. 200, 208 (1993).  Therefore, there is no statutory basis for sealing an application or order under the SCA that would overcome the common law right to access.

### c.  The First Amendment Right To Petition The Government For Redress Of Grievances Demands Public Access

The Petition Clause of the First Amendment protects the public's right to petition the government for redress of grievances.  *Borough of Duryea, Pa. v. Guarnieri,* 131 S.Ct. 2488, 2494 (2011).  "It was not by accident or coincidence

12

that the rights to freedom in speech and press were coupled in a single guaranty with the rights...to petition for redress of grievances." *Id.* (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)). Essentially, free speech allows the public to frame its grievances and the right to petition ensures that it can communicate those grievances to the government. However, the 2705(b) Order effectively denies Mr. Levison these rights and forbids him from sharing his experiences with the world. As an innocent bystander caught up in this investigation, Mr. Levison cannot adequately frame his grievances or communicate them.

The 2705(b) Order prohibits Mr. Levison from disclosing any information regarding the order or the underlying investigation. A representative democracy depends upon the people being afforded the opportunity to make their wishes known to their representatives. Although Mr. Levison does not agree with the rules that are subjecting him to serious overreaching by the Government, he has been denied the ability to petition the Government for redress. The 2705(b) Order marks an extremely unsettling expansion of government power by allowing them to jeopardize the privacy of thousands to investigate a few. By concealing these proceedings the government is blocking the free formation of public opinion and denying Mr. Levison the right to voice his opinion.

## CONCLUSION

For the foregoing reasons, Lavabit respectfully moves this Court to unseal its records concerning the Government's attempt to obtain certain

encryption keys and lift the non-disclosure order issued on Mr. Levison. Alternatively, Lavabit requests that all of the sealed documents be redacted to secure only the information that the Court deems, after review, to be properly withheld.  Mr. Levison also requests that he be allowed publicly to release the email messages between Lavabit and the target.

**LAVABIT LLC**
**By Counsel**

Jesse R. Binnall, VSB# 79292
Bronley & Binnall, PLLC
10387 Main Street, Suite 201
Fairfax, Virginia 22030
(703) 229-    -Telephone
(703) 537-0780- Facsimile

*Counsel for Lavabit LLC and Ladar Levison*

David Warrington
Laurin Mills
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA 22314
(703) 647-     Telephone
(703) 647-5966- Facsimile

*Counsel for Lavabit LLC and Ladar Levison*

14

## Certificate of Service

I certify that on this 13th day of December, 2013, this Motion For Unsealing Of Sealed Court Records And Removal Of Non-Disclosure Order And Memorandum Of Law In Support was hand delivered to the person at the addresses listed below:

██████████████████

United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

██████████████████

United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

██████████████████

Jesse R. Binnall

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E
JAN 1 0 2014

| | |
|---|---|
| In re: Search Warrant Issued to Lavabit, LLC | Case No. 1:13 SW 569 |
| | **Under Seal** |

## RESPONSE IN OPPOSITION TO LAVABIT, LLC, AND LADAR LEVISON'S MOTION FOR UNSEALING OF SEALED COURT RECORDS

The United States of America, by and through its undersigned counsel, hereby opposes in part the motion of Ladar Levison and Lavabit, LLC (hereinafter "Lavabit"). As discussed further below, the parties have agreed to the unsealing (with redaction) of a substantial number of the documents Lavabit seeks. However, one small area of disagreement remains: the parties could not agree on appropriate redactions to the attachment to the search warrant at issue in this matter. To the extent Lavabit seeks to unseal the attachment, the motion seeks to unseal information related to an ongoing criminal investigation. Because the disclosure of information regarding the direction, scope, and nature of the investigation will seriously jeopardize the investigation, Lavabit's motion should be denied.

### *Background*

On December 13, 2013, Lavabit filed a motion to unseal records in the above-captioned matter. The motion sought the unsealing of six categories of records: (1) all orders and documents filed in this matter before the Court's issuance of the August 1, 2013, 2705(b) Order; (2) all orders and documents filed in this matter after the issuance of the 2705(b) Order; (3) all

search and seizure warrants issued before or after issuance of the 2705(b) Order; (4) all

transcripts from any hearing relating to the 2705(b) Order or search and seizure warrants; (5) all

documents filed in connection with such orders or requests for such orders; and (6) all email

messages between Mr. Levison or Lavabit and the target of the investigation.  Lavabit. Mot. at 1-

2.

     After receiving the motion from the Clerk's office, government counsel contacted

counsel for Lavabit to see if the motion could be resolved without litigation.  As a result of those

discussions, the government prepared proposed redactions for certain documents that were the

subject of Lavabit's motion.  The government did not agree to the unsealing of certain records,

and did not propose any redactions for those documents.[1]  The government requested that Lavabit

review the proposed redactions and inform the government if unsealing of the redacted

documents would resolve the motion.  The government's proposed redactions are attached to this

pleading as Attachment A.

     On January 9, 2014, counsel for Lavabit informed the government that Lavabit agreed

with the redactions with one exception.  Lavabit did not agree that subparagraphs B, C, and D of

subsection II of Attachment B to the search warrant should be redacted, and Lavabit asked the

government if it would consent to the unsealing of that information.  An unredacted version of

Attachment B to the warrant is attached to this pleading as Attachment B.  The government does

not agree that information should be unsealed for the reasons that follow. Because Lavabit's own

---

[1] The government did not propose redactions for the following documents: (1) the *ex parte* affidavit in support of the application for search warrant 1:13 SW 569; (2) the *ex parte* application for the 2705(b) Order; and (3) the *ex parte* motion to seal search warrant 1:13 SW 569. Based on conversations with Lavabit's counsel, the government does not believe Lavabit continues to seek unsealing of these documents. Therefore, these documents are not specifically addressed in this response. To the extent the motion does seek these records, the government believes its original reasons for sealing the documents remain valid.

2

pleading acknowledges that redaction of certain documents would resolve most of its claims, this pleading only addresses those claims that are specific to the portion of the attachment that remains in dispute.

### *Argument*

Subparagraphs B, C, and D, of subsection II to Attachment B to the warrant ("subsection II") is properly sealed. The public has a common law right of access, but not a First Amendment right of access, to documents associated with ex parte proceedings such as search warrant affidavits. *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005). But the right of access is qualified, and a judicial officer may deny access to search warrant documents if sealing is essential to preserve higher values and narrowly tailored to serve that interest. *Id.* at 429 (citations omitted); *see also In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984) ("The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests"). Sealing search warrants and their accompanying affidavits and application is within the discretionary powers of a judicial officer where, among other things, an "'affidavit contain[s] sensitive details of an ongoing investigation' and it is 'clear and apparent from the affidavits that any disclosure of the information there would hamper' th[e] ongoing investigation." *Media General Operations*, 417 F.3d at 430 (citations omitted); *see also In re Search Warrant for Matter of Eye Care Physicians of America*, 100 F.3d 514, 518 (7th Cir. 1996). Here, the government's interest in investigation of crime outweighs any other interest in disclosure.

The secrecy of criminal investigations prior to the return of an indictment is crucial to their success. "Fair and effective law enforcement . . . is a fundamental function of government." *See Branzburg v. Hayes*, 408 U.S. 665, 690 (1972); *see also In re Grand Jury*

*Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1305 (4th Cir. 1987) (Wilkinson, J., concurring) (noting issuance of process serves society's compelling interest in law enforcement). "[L]aw enforcement agencies must be able to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation." *Va. Dept. of State Police v. Washington Post*, 386 F.3d 567, 574 (4th Cir. 2004). Indeed, the idea that criminal investigations should remain confidential prior to the return of a charging document is a concept that pre-dates the founding of our country, *see Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218 n.9 (1979), and one that has been repeatedly upheld by the courts, *see United States v. United States District Court*, 407 U.S. 297, 321-22 (1972) ("The investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved.").

The redaction of subsection II furthers that interest. Subsection II describes the information to be seized by the government after execution of the warrant. It is, in essence, a "road map" to the government's ongoing investigation. Public release of such information would identify the conduct the government is investigating, the potential charges under consideration, the government's interest in identifying others potentially involved in criminal conduct, and other items of interest to the investigation. Such release would compromise the investigation by giving the target or targets of the investigation an opportunity to destroy evidence, change patterns of behavior, or take other efforts to avoid discovery of their criminal acts. Such risks justify sealing. *Media General Operations*, 417 F.3d at 430 (citations omitted).

That this information would reach the target of the investigation is a certainty. ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

 As such,

damage to the investigation is likely, and the information should remain sealed.

None of the arguments in Lavabit's pleading justify disclosure of Subsection II. Lavabit's primary challenges are to what he believes is the blanket non-disclosure order issued in conjunction with the search warrant. However, unsealing of the redacted documents in Attachment A will allow Lavabit to disclose the existence of a search warrant, just not the target of the investigation or the information specifically sought by the government. Lavabit itself acknowledges this will resolve its claims. Lavabit Br. at 5 (noting that "appropriate redactions" are justified). At least in its opening brief, Lavabit identifies no specific public benefit to the pre-indictment release of information the government seeks in an ongoing criminal investigation. There is none. *See In re Application of the U.S. for an Order Pursuant to § 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013) ("The mere fact that a case is high profile in nature does not necessarily justify public access."); *In re Application of the U.S. for an Order Pursuant to § 2703(d)*, 830 F. Supp. 2d 114, 152 (E.D. Va. 2011).

---

[2] Counsel for Mr. Levison was present during this interview.

One more issue requires discussion. Lavabit requested permission to disclose "all email messages between Mr. Levison or Lavabit and the target of the investigation." Emails between Mr. Levison and anyone, including the target of the investigation, are not (to the government's knowledge) court records. Thus, the government does not understand the nature of Lavabit's request. Moreover, counsel for Lavabit represented that Lavabit agrees to the redaction of the name of the target of the investigation. However, to the extent Lavabit still seeks to publicly identify the target of this warrant or any other warrant received by Lavabit, the government believes such information is properly sealed and that any such disclosure linking the investigation to a particular target is prohibited by the existing sealing orders in this matter.

### Conclusion

For the forgoing reasons, Lavabit's Motion to Unseal should be denied in part. The Court should unseal only those records contained in Attachment A, and only with the redactions proposed by the government. The remainder of Lavabit's motion should be denied.

Respectfully submitted,
DANA J. BOENTE
Acting United States Attorney

By:

Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Ph: 703-299-3700
Fax: 703-299-3982

6

### CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of January, 2014, I sent the foregoing via electronic mail to:

Jesse Ryan Binnall
Email: jbinnall@bblawonline.com
Bronley & Binnall, PLLC
10387 Main Street
Fairfax, VA 22030-0000



Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3982

7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  | |
|---|---|
| IN RE: SEARCH WARRANT ISSUED TO LAVABIT, LLC | **FILED UNDER SEAL**<br><br>No. 1:13SW569 |

## REPLY MOTION TO UNITED STATES' OPPOSITION TO LAVABIT, LLC'S AND LADAR LEVISON'S MOTION TO UNSEAL[1]

Releasing the generic language which the government is seeking to redact does not jeopardize the ongoing investigation nor does it reveal information that is not already public. Counsel for Lavabit, LLC and Ladar Levison and the United States have agreed to the redaction and unsealing of all the documents at issue, except one. Lavabit and Mr. Levison oppose the redaction of the Search and Seizure Warrant, Attachment B, Subsection II, subparagraphs b, c, and d. The United States has no legitimate law enforcement reason for redacting these subparagraphs of the Search and Seizure Warrant, because unsealing them will not disclose sensitive information relating to the investigation.

Disclosing that the government seeks "b. evidence of the identities of the users of the account and co-conspirators and others associated with the

---

[1] Respondent has corrected the caption. The Motion to Unseal was inadvertently and incorrectly captioned.

account and the criminal activities facilitated by the use of the account; c. evidence of the location of the users of the account and co-conspirators and others associated with the account, and; d. records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts" does not reveal any new details of the government's investigation.  Search and Seizure Warrant, Attachment B, Subsection II.  This generic language could refer to the email records of a suspect involved in selling illegal narcotics or operating a child pornography ring; it does not allude to or name specific crimes or individuals.

## ARGUMENT

The public has a common law right of access to judicial records, which can only be overcome if the affidavit contains sensitive information, the disclosure of which, might impede the government's investigation.  *See Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (stating that reasons for continuing to seal the affidavit included the preliminary stage of the investigation, potential impact on parties if unproven criminal allegations were made public, the impact of the affidavit on other investigations, and the privacy interest of individuals).  In *Media General Operations*, the affidavit was over 100 pages long and contained highly sensitive information.  *Id.* at 427, 430.  The affidavit in this case is extremely brief, and the language the respondents seek to unseal contains no identifying information.  The language of these subparagraphs gives no indication of the target of the investigation, the crime the target is accused of committing or

2

other potential parties involved. It recites a generic list of information sought by the government. Due the public's knowledge of this information and the generic nature of the subparagraphs, there is no legitimate criminal justice reason to redact this information.

Releasing the language of this affidavit will not alert the subject of the investigation to any new information or tip the government's hand. The general public is well aware that the government is looking for anyone the target was conversing with and where that person is or was located. This is not new or novel information nor is it specific enough to alert the target or any co-conspirators and allow them to hinder the investigation or hide their crimes.

Simply because information is contained in a search warrant affidavit does not mean that releasing it would harm the ongoing investigation. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004) (stating that once information is made public, there is no reason to seal it). Wide spread media reporting on ████████ Lavabit's involvement defeats the government's argument. *See In re a 18 U.S.C. § 2703(d) Order issued to Google, Inc. on June 10, 2011*, 2012 U.S. Dist. LEXIS 25770, *2 (E.D. Va. 2012) (Jones, Jr., J.) (stating that the Government's

3

concern of confidentiality is moot, because the matter had been widely publicized). The government is attempting to shut the barn doors after the horses have fled.

Unsealing these three subparagraphs of the affidavit will not jeopardize the government's ongoing investigation, because the language of the subparagraphs is generic and reveals no names, locations, potential crimes charged or other details. Additionally, the government's inquiry into these matters is already public knowledge, and releasing the contents of these subparagraphs does not add any additional information to the public discourse. Public knowledge of these three subparagraphs will not jeopardize the investigation.

## CONCLUSION

For the foregoing reasons, Lavabit respectfully moves this Court to unseal the documents agreed upon by counsel and additionally to unseal Attachment B, subsection II, subparagraphs b, c, and d and for such further relief as this Court deems just and appropriate.

## STATEMENT OF ORAL ARGUMENT

Oral argument is respectfully requested.

LAVABIT LLC
By Counsel

4

Jesse R. Binnall, VSB # 79292
Louise T. Gitcheva, VSB # 86200
Bronley & Binnall, PLLC
10387 Main Street, Suite 201
Fairfax, Virginia 22030

*Counsel for Lavabit LLC and Ladar Levison*

David Warrington
Laurin Mills
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA 22314

*Counsel for Lavabit LLC and Ladar Levison*

## Certificate of Service

  I certify that on this 15th day of January, 2014, this Reply Motion to Government's Opposition to Lavabit, LLC's and Ladar Levison's Motion to Unseal was hand delivered to the person at the addresses listed below:

United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

Jesse R. Binnall
Louise T. Gitcheva

6

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IN RE:  APPLICATION OF THE      .    No. 1:13sw569
UNITED STATES OF AMERICA FOR    .
AN ORDER PURSUANT TO            .    Alexandria, Virginia
18 U.S.C. § 2705(b)             .    February 20, 2014
                                .    3:07 p.m.
.  .  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF SEALED MOTION HEARING
BEFORE THE HONORABLE T. RAWLES JONES, JR.
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE MOVANTS:            JESSE R. BINNALL, ESQ.
                           Bronley & Binnall, PLLC
                           10387 Main Street, Suite 201
                           Fairfax, VA 22030


FOR THE GOVERNMENT:        MICHAEL BEN'ARY, AUSA
                           ANDREW PETERSON, AUSA
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314


TRANSCRIBER:               ANNELIESE J. THOMSON, RDR, CRR
                           U.S. District Court, Fifth Floor
                           401 Courthouse Square
                           Alexandria, VA 22314
                           (703)299-8595



(Pages 1 - 25)



(Proceedings recorded by electronic sound recording, transcript
produced by computerized transcription.)

2

1                     P R O C E E D I N G S

2              THE CLERK:  In re:  Search Warrant, Case No. 13sw569.

3              MR. BINNALL:  May it please the Court, Jesse Binnall

4     for Lavabit, LLC, and Ladar Levison.

5              THE COURT:  Good afternoon, Mr. Binnall.  We're here

6     on your motion to unseal a portion of the record, which I have

7     read.  I want to compliment and commend counsel for working

8     through and reaching agreement to the extent that you have been

9     able to reach agreement.  I'll hear you on anything that you

10    want to add to what's already been said in the papers as to the

11    remaining dispute.

12             MR. BINNALL:  Thank you, Your Honor.  And we were

13    able to come to a resolution on the vast majority of the

14    issues, and quite honestly, the U.S. Attorney's Office was very

15    helpful in working with us to, to do just that.  What remains

16    at issue are three subsections regarding attachment 2, Your

17    Honor.

18             We believe that there are two very distinct issues

19    involved in this.  There are the issues regarding whether this

20    information should remain sealed and whether the nondisclosure

21    obligations of Lavabit, LLC, and Mr. Levison should remain in

22    place regarding these items.

23             The majority of the government's brief --

24             THE COURT:  Well, from a, from a practical

25    standpoint, where do those two questions diverge into separate

3

1    decisions?

2        MR. BINNALL:  And, and that is really the rub of the

3    issue, Your Honor.  They diverge in the Court's internal

4    procedures of sealing a case and then the prior restraint

5    against speech of Mr. Levison and Lavabit in not being able to

6    disclose the information that he knows.

7        Mr. Levison never signed up to have his First

8    Amendment rights in this matter forfeited, and we know that in

9    the law, in constitutional law, there are few things that are

10   as disfavored as a prior restraint on speech, and the

11   nondisclosure obligations are what specifically would prohibit

12   Mr. Levison from talking about these issues that, quite

13   honestly, Your Honor, involve some of the hottest political

14   issues in the country and indeed the world today, and to stop

15   him from being, being able to speak on those issues, we

16   believe, is very much against the First Amendment and should

17   not be allowed.

18       THE COURT:  Well, without quarreling with you in any

19   respect on the importance of the First Amendment rights in

20   issue, as we come down to the three short subparagraphs that

21   are still in dispute between you and the government, at the

22   risk of oversimplifying, which I don't intend to do, I think we

23   can keep the decision that the Court needs to make today fairly

24   simple.

25       MR. BINNALL:  And I understand the Court's position

4

1   on that, and to a certain extent, it is because Mr. Levison and

2   Lavabit do not wish to question the nondisclosure requirements

3   regarding the target of the investigation, and that's why

4   subparagraph (a) is not in issue here.  We are not asking that

5   that -- or we are okay with that paragraph being redacted.

6          The reason for that is it talks about evidence of

7

8

9

10

11

12          Subparagraphs (b), (c), and (d) do not do that.

13          THE COURT:  Well, I think it arguably goes beyond

14   that.  I have to tell you I don't have any problem with, with

15   the government's position as to paragraph (a), which is not in

16   issue today.

17

18

19

20          MR. BINNALL:  Correct, and --

21          THE COURT:  But since that's, since that's not in

22   issue, let's move on to (b), (c), and (d).

23          MR. BINNALL:  Exactly, Your Honor.  Evidence of the

24   identities of the users of the account or coconspirators or

25   others associated with the account and the criminal activities

8

5

1   that -- facilitated by the use of the account, none of that,

2   Your Honor, goes to show who the target of the investigation

3   is.  It does not show what the target is being charged with.

4         It simply goes to information involved in the

5   crime and -- or the alleged crime at this point, and it goes to

6   Mr. Levison's right to, to speak as to if he feels that those

7   are appropriate things that the government should be seeking.

8         THE COURT:  About anybody for any reason.

9         MR. BINNALL:  About anyone for any reason.

10        THE COURT:  Okay.

11        MR. BINNALL:  And --

12        THE COURT:  All right.

13        MR. BINNALL:  -- there's been some discussion in the

14  papers, Your Honor, that Mr. Levison has, has openly discussed

15  with the press the target of the investigation.

16        He has not.

17

18

19

20

21

22

23

24

25

8

6

1    And so he has no desire to say with regards to (b)

2  that in this case, we should -- tying it in with the target.

3  Likewise, with (c) and (d), he has no intention of tying it in

4  with the target.

5    THE COURT:  And I, I expect that your evaluation of

6  (c) and (d) is similar to your evaluation of (b).

7    MR. BINNALL:  That's exactly right, Your Honor.  It

8  is.

9    THE COURT:  Okay.  I didn't want to cut you off, but

10  now that you've confirmed my suspicion, they're going to have

11  to convince me that you're not right.

12    MR. BINNALL:  Okay, Your Honor.  Well, then I will

13  sit down.

14    MR. PETERSON:  Your Honor, what I think all (b), (c),

15  and (d) go to concern the scope of the government's

16  investigation -- excuse me, just for the record, Andrew

17  Peterson on behalf of the United States.  With me at counsel

18  table is Michael Ben'Ary.

19    THE COURT:  Thank you.

20    MR. PETERSON:  These go to the scope of the

21  government's investigation, which is information that the

22  government has can lawfully be sealed and should be sealed in

23  this case because they --

24    THE COURT:  It is not clear to me how the subject

25  matter of (b) or (c) or (d) if revealed does what you just said

8                                                                                          7

1    it does.  So you need to explain to me how the harm that you

2    asked the Court to prevent would occur if these three

3    paragraphs were revealed in addition to what the two sides have

4    already agreed can be revealed.

5            MR. PETERSON:  I think the relevant text in each of

6    these paragraphs, certainly for (b) and (c), is "and

7    coconspirators," which appears in (b) after "the users of the

8    account and coconspirators, evidence of the location of the

9    users of the account and coconspirators."

10           The focus and what is known about --

11           THE COURT:  Is there anybody -- I don't want to

12   engage in hyperbole; I started to say is there anybody on the

13   planet.  Is there anyone who reads the paper and uses an e-mail

14   account who wouldn't understand that an investigation of

15   anybody for any particular crime might include the possibility

16   that that person had coconspirators?

17           I mean, it -- in a colloquial way of putting it, it

18   goes with the territory.  I mean, it's part of any criminal

19   investigation, and it's at that level that I, I lose contact

20   with the government's argument.

21           MR. PETERSON:  Well, I would take a step back, Your

22   Honor, because I do think subparagraphs (b), (c), and (d), the

23   justification for sealing subsection (2) relates to the fact

24   that the government believes that the information that it

25   seeks -- what we're talking about here is not, obviously, a

8                                                                              8

1   Rule 41 warrant, where we are walking into a particular

2   location and checking items off the warrant.

3           The procedure under the Stored Communications Act is

4   such that we ask a service provider to disclose a certain

5   category of records but we are only authorized by the Court to

6   seize a particular subset of those records, and the government

7   believes that what it is seeking to seize in a particular case

8   in this -- in the context of the Stored Communications Act,

9   those particular records are things that should properly be

10  sealed into the investigation concludes.

11          We're not talking about an indefinite sealing order.

12  We're not talking about an indefinite nondisclosure order, and

13  in fact, the government has been, in my opinion, fairly

14  aggressive in terms of these cases in allowing a substantial

15  portion of the records that we still believe were properly

16  sealed and are properly sealed to be disclosed.

17          THE COURT:  And I, I compliment you on that.

18          MR. PETERSON:  But what the government doesn't

19  believe is appropriate for discussion now, not ever but now,

20  are those records that the government was seeking to use as

21  part of its investigation, and the crucial aspect of that for

22  subparagraphs (b), (c), and (d) relate to not only the target

23  of the investigation but also interactions between the target,

24  and I think going back to the Court's --

25          THE COURT:  How -- accepting that argument at face

8                                                                              9

1    value, how does it apply to (d)?

2              MR. PETERSON:  Well, I think, Your Honor, where it

3    says "records relating to who created, used, or communicated

4    with the account or identifier, including records about their

5    identities and whereabouts," so that indicates that the

6    government is also interested in other persons who communicated

7    with the account and where those persons are, and that actually

8    ties directly back to the government's justification for

9    sealing, which is that other individuals who may now be known

10   or unknown to the government would benefit from this

11   information because it would give them an opportunity to

12   destroy evidence, collaborate, talk about stories before the

13   government is able to reach them as part of its investigation,

14   because it puts those individuals on notice, other people who

15   may not be the specific user of the account, that they should

16   take steps because they may be within the scope of the

17   government's investigation.

18             THE COURT:  Does that argument assume that the people

19   that you're concerned about have already inferred that the

20   investigation is of a particular central target?

21             MR. PETERSON:  Well --

22             THE COURT:  Because if, if not, then I think the

23   argument loses force.

24             MR. PETERSON:  Well, I think we are talking here

25   about it's not a black-or-white issue, Your Honor.  Certainly

8                                                                          10

1   there is public speculation about -- and again, because this is

2   actually -- when Mr. Binnall talks about the target of the

3   investigation, when we're talking about particular warrants or

4   particular process served on Lavabit, the assumption made by

5   Lavabit

6                          is that those accounts belong to a particular person

7   and that it is a single --

8             THE COURT:  Well, he's, he's equating subscriber to

9   the account with target of the investigation.

10            MR. PETERSON:  Correct,

11

12

13

14

15

16

17

18

19                          That's why the government is very cautious

20  and wants to be cautious about unsealing disclosures while the

21  investigation is pending.

22            I think that's the issue that Judge O'Grady dealt

23  with in the In re: Application case that was brought to him

24  after Judge Buchanan ruled, that when -- because this isn't the

25  only process that's at issue in any investigation.  We're

8                                                                               11

1   talking about one warrant, but as additional process gets

2   disclosed or if the standard that Your Honor just described,

3   well, everyone knows about it from other publications or from

4   the press, nothing from specific government disclosures

5   necessarily, then all the process --

6           THE COURT:  I wasn't talking then -- and if I was

7   ambiguous, I regret that.  I was trying to describe then in the

8   part of the colloquy that I'm remembering the reaction of

9   anybody to the revelation of a document regarding any criminal

10  investigation.

11          My suggestion was that I think I said anybody who has

12  an e-mail account and reads the paper would expect that in any

13  investigation of any particular crime, this is the kind of

14  information that the government would be looking for.

15          MR. PETERSON:  I, I think --

16          THE COURT:  So if, if the answer to that inquiry were

17  yes, then it seems to me it would follow that you/the

18  Court/whoever is not revealing anything of use --

19          MR. PETERSON:  I would agree with the Court if

20

21

22

23

24

25



```
 8                                                    12
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20                                            because
21  there is information out there that people will put together
22  potential targets of the investigation or other coconspirators
23  or other individuals who have evidence that relate to the
24  investigation, and it's the government's belief that if they
25  put two and two together, they could destroy evidence that is
```

8                                                                            13

1    relevant to the investigation or collude such that the

2    investigation would be damaged by that loss of evidence or the

3    loss of investigatory leads that would result from it.

4            THE COURT:  And the government's assumption, I

5    gather, is that there's at least somebody out there that the

6    government might be interested in who hasn't already put two

7    and two together.

8            MR. PETERSON:  I think, well, Your Honor, the

9    government is certainly hesitant to say that there's no one out

10   there.  I mean, we never know what -- when all the evidence

11   that we don't have has been destroyed, so --

12           THE COURT:  You don't know what you don't know.

13           MR. PETERSON:  Correct.  It's impossible for me to

14   represent with any certainty that there is an identifiable

15   person that I can say if this is released, that person will

16   destroy evidence, but there are certainly -- it is an active

17   and ongoing investigation.  The government is still trying to

18   develop as -- evidence and leads, and we believe that the

19   probability that such damage will occur is sufficient to

20   justify the sealing of that information.

21           And again, the government is agreeing to the

22   unsealing of a substantial portion of information --

23           THE COURT:  You are indeed.

24           MR. PETERSON:  -- but in that context, that

25   information needs to remain sealed.

8

14

1           THE COURT:  All right, thank you.

2           Mr. Binnall?  Actually, before you respond, give me

3    just a moment.

4           MR. BINNALL:  Yes, Your Honor.

5           THE COURT:  All right, thank you.

6           MR. BINNALL:  Thank you, Your Honor.  Your Honor, I

7    would like to direct the Court's attention to *Turner*

8    *Broadcasting System v. Federal Communications Commission*, which

9    is cited in our brief and specifically talks about how the

10   existence of a disease to be cured is not enough.  The

11   government has to demonstrate that the recited harms are real,

12   not merely conjectural, and the regulation will, in fact,

13   alleviate these harms in a direct and material way.

14          In other words, Your Honor, "We don't know what we

15   don't know," is not enough.  That doesn't get the government to

16   their burden of where on one hand, they do have the interests

17   of their investigation, which is understandable; on the other

18   hand, they have -- we have the First Amendment speech rights of

19   Mr. Levison, we have the interest of the public and -- to have

20   an open access to justice, we have Mr. Levison's right to talk

21   about some of these issues with his representatives in

22   Congress, who continue right now to try to figure out how to

23   deal with many of the issues involved in this case for the

24   future.

25          THE COURT:  How, how will continued redaction of (b),

8                                                                                    15

1    (c), and (d) prevent him -- with, with release of everything

2    else that the government is agreeing to, how will continued

3    redaction of (b), (c), and (d) prevent Mr. Levison from

4    effectively doing those things?

5              MR. BINNALL:  Because he won't be able to speak

6    specifically to these issues.  Specifically --

7              THE COURT:  How will speaking specifically to these

8    issues promote the ends that he would be seeking to promote in

9    exercising his First Amendment rights?

10             MR. BINNALL:  Because of the breadth of the

11   information that the government is seeking in this case.  And I

12   understand --

13             THE COURT:  That, that takes me then to what I was

14   looking at when I asked you to wait for a minute.  Have you-all

15   discussed partial but not entire redaction of (b), (c), and

16   (d)?

17             MR. BINNALL:  We have not, Your Honor.

18             THE COURT:  Well, I didn't bring out a second copy

19   and I'm not going to mark up what is part of the record right

20   now, but it occurred to me given the spirit in which you've

21   both approached the process and what you were able to

22   accomplish already, you might consider a compromise in which

23   (b) read something like this:

24             "Evidence of the identities of the users of the

25   account and," then redact the rest of (b), which would let

8
16

1   Mr. Levison talk about the fact that, that the investigation

2   had additional breadth because there was something else that he

3   can't talk about that they were asking for; and (c), "Evidence

4   of the location of," and then redact the rest of (c); and then

5   (d), "Records relating to who created," redact "used," leave

6   in "or," and redact everything else except "including."

7           MR. BINNALL:  Is that "including" forward or only the

8   words -- only the word "including"?

9           THE COURT:  Keep in the word "including," but redact

10  the balance after.  You'd leave in "or," you'd leave in

11  "including," redact everything else after "created."  That, it

12  seems to me off the top of my head, would protect the interests

13  that Mr. Peterson asserts the government needs to protect while

14  allowing Mr. Levison to do what you say he wants to do.  So I

15  invite you-all to consider that.

16          MR. BINNALL:  And, Your Honor, here's, here's my, my

17  take on that:  That's certainly better than having all of (b),

18  (c), and (d) redacted, and that would be, be preferable to, to

19  what the government's asking for.

20          That being said, we still don't believe that the

21  government has met their burden on redacting any of (b), (c),

22  and (d).  We think that the parts that still would be redacted

23  are still very important to the discussion, and I would say

24  especially (d), to --

25          THE COURT:  Especially (d)?

8                                                                                                    17

1              MR. BINNALL:  Especially (d), delta.

2              THE COURT:  (D), David, okay.

3              MR. BINNALL:  Your Honor, as to the -- as to the

4    breadth of the steps that the government is taking in such

5    investigations in what they're seeking, we think that's a

6    discussion that is very much in the public domain already, and

7    to restrict Mr. Levison and Lavabit from engaging in that

8    debate as well as restricting the public's access to that

9    information and others in Lavabit's situation from engaging in,

10   in that debate by not having the information, that -- the

11   weight of that especially with the heavily disfavored status of

12   nondisclosure requirements, prior restraints against speech,

13   don't -- are -- far outweigh, "We don't know what we don't

14   know."

15             And in fact, in the *TBS* case, like I said, Your

16   Honor, I think that's specifically addressed and that just

17   saying that it involves an investigation isn't enough to get it

18   to the sealing point, isn't enough.  On top of the sealing

19   point, we do believe it should be unsealed as well as getting

20   rid of the nondisclosure requirement, but especially when you

21   take into account the very high stakes of a prior restraint

22   against speech.

23             And on top of that, Your Honor, if you look at the,

24   at the text of 2705(b), which lays out the factors that the

25   government has to take in -- or that the Court should take in

8                                                                              18

1    mind --

2              THE COURT:  As I did in the brief orders that you

3    cite in your memorandum.

4              MR. BINNALL:  Right.  Yes, Your Honor.  We don't

5    think that that -- that the interest here falls within the

6    statutory language in 2705 that would allow such a restriction

7    of (b), (c), and (d), even if there was some partial redaction

8    at that point.

9              So because of all that, I don't even think further

10   redaction of those gets us really where my client has a, has a

11   right to be at this point.  I believe that -- and I know my, my

12   client believes that he needs to be able to fully engage in the

13   discussion going on right now regarding the scope of

14   investigations and investigations as to who's talking to who.

15             THE COURT:  Well, I, I suggest to you -- and it is

16   only a suggestion -- that as I evaluate the situation as of

17   now, he could probably do that with the partial redactions that

18   I've suggested.

19             MR. BINNALL:  Here's, here's the problem, Your Honor,

20   if I might, is that there's a chilling effect.  It's going to

21   require him to go right up to the line, to the line of being

22   able to speak openly and not knowing if he's going to be

23   charged with obstruction of justice or violation of a court

24   order and being held in contempt of court, and that provides a

25   chilling effect to him, and that's the type of chilling effect

8                                                                          19

1    that is directly involved in our arguments regarding the First

2    Amendment aspects of this case.

3              THE COURT:  But isn't that, isn't that typical, if

4    you will, I mean, even emblematic of the tension that

5    inherently exists when the government's clear need for some

6    confidentiality in ongoing criminal investigations is

7    cogexisting with a citizen's First Amendment right, and it's a,

8    as we're finding out, a fact-specific situation, specific

9    inquiry and determination in each of the -- on each of the

10   occasions when courts have to decide this, but --

11             MR. BINNALL:  And, and there are both those

12   interests, and I would agree with Your Honor that there are

13   both those interests.  The question is how we weigh those

14   interests, and the, the question is also when looking at

15   specific requirements against speech, how do we make those

16   requirements fit within the First Amendment as interpreted by

17   the, the courts through the ages, and I think that's, that's

18   the rub is that --

19             THE COURT:  Believe me, I understand.

20             MR. BINNALL:  I'm sure you do, Your Honor.  Is, you

21   know, we -- vagueness and overbreadth are the, are the harms

22   that the Court specifically has to struggle with, but at

23   this -- almost every juncture, the Court sides with speech, but

24   that is the true danger, the biggest danger is on the

25   government and its entities preventing speech or even making

8                                                                          20

1   people wonder whether or not if they speak, they might have to

2   go to jail, and in something like this, where we leave a gray

3   area on these, on these subjects, that, that gray area will

4   exist.  There will be a chilling effect.

5          THE COURT:  I'm not sure I agree with your

6   characterization of what would -- at least if, if partial

7   redactions were made to (b), (c), and (d), I'm not sure that I

8   agree with your characterization of that situation as a gray

9   area.  I mean, your client would be able to say what I would

10  call a bright line basis:  "They asked for additional material

11  that I can't talk about."

12          He can say that.  He just can't say what it was.

13  That's, that's -- might be unacceptable to him, but I don't

14  think it's gray.

15          MR. BINNALL:  Well, what if he were to say "users of

16  the accounts and others"?  If he says that -- and remember, my

17  client is not a lawyer -- how far up to the line can he go with

18  saying, "There's something else here that's redacted, and so

19  clearly, it's more than just users of the account.  How much

20  more can I talk about before I have to worry about the

21  handcuffs going on?"

22          THE COURT:  Well, that problem is inherent in these

23  situations, it seems to me, Mr. Binnall.  He -- I mean, you --

24  and I know you don't speak for him in this sense, but on his

25  behalf, you said what he wants to do is talk about the breadth

8                                                                                      21

1    of what, what he regards as the inappropriate breadth of the

2    investigation.  He'll be able to say very clearly, albeit not

3    as specifically as he would like, that the investigation is

4    much broader than --

5            MR. BINNALL:  And I understand what the Court is

6    saying.  Let me --

7            THE COURT:  Okay.  And we don't need to keep going

8    around.

9            MR. BINNALL:  And I understand that.  If I might just

10   beg your patience for a moment to talk about, about paragraph

11   (d) and I think the real life implications here, if we redact

12   paragraph (d), "Records of who created, used, or communicated

13   with the account or identifier, including records about their

14   identities and whereabouts," I believe it is the position of my

15   client that this is very similar to the multi-hopping that is

16   very much at issue right now in the press about the scope of,

17   of government investigations and surveillance.

18           This particular paragraph, I think, is, is very

19   probative exactly to that point, and it's very much in the

20   public interest and the public debate right now, and it's

21   something that I believe my client and others wish very much to

22   take part in that discussion, and they have information that

23   would allow them to do that.

24           My client is not someone who signed up for a security

25   clearance.  He's not someone who voluntarily entered into

8                                                                              22

1    something where he would give up his First Amendment rights.

2    He is just a plain old American citizen who wishes to be able

3    to engage in the public discourse going on today on these

4    subjects and in the industry that he's a part of.

5            And for paragraph (d), if that's redacted and if

6    there's parts there that he can't talk about, that is very much

7    a prior restraint to his speech, and I understand that it gets

8    to a gray area, but that gray area is exactly what the Court

9    tells us that we're supposed to avoid, which is, I think, very

10   informative, that I can't find a United States Supreme Court

11   decision that says any of these, these particular gag orders

12   regarding these things are acceptable.

13           In fact, if allowing newspapers to publish classified

14   information, if that is allowed by the First Amendment, I have

15   a hard time seeing why paragraph (d) would not be allowed by

16   the First Amendment, as, of course, was the case in the

17   Pentagon Papers case, and so that is, I think, the, really the

18   very large First Amendment issue.

19           THE COURT:  What a court has the responsibility to

20   approve or disapprove and what a newspaper has the ability to

21   get away with, as the government would characterize it, are

22   frequently two different things.

23           MR. BINNALL:  I, I understand that, Your Honor, but

24   what has been going on in this case is not us really getting

25   prior permission.  It's that there was an order previously

8                                                                              23

1    entered that was certainly the very definition of a prior

2    restraint against speech, and we're now asking for the same

3    relief to that speech as was the case in the Pentagon Papers

4    case, where *The New York Times* and *The Washington Post* and

5    everyone else went to the court and said that an injunction is

6    improper stopping us to release this classified information to

7    the public.

8            What's exactly what Mr. Levison is doing in this case

9    is there was an injunction against his speech that was entered,

10   and he's now asking for relief from that speech the same way

11   that the papers did in, in the Pentagon Papers case.

12           THE COURT:  All right, I understand your position.

13   Thank you.

14           MR. BINNALL:  Thank you, Your Honor.

15           THE COURT:  Mr. Peterson, it's his motion, but it's

16   your burden.  You get the last word.

17           MR. PETERSON:  Very briefly, Your Honor.  I just want

18   to point out that I think the last interaction between yourself

19   and Mr. Binnall was illuminating because I think it

20   demonstrates that what Mr. Levison wants to disclose is not the

21   general discussion of breadth of government's investigations,

22   but it's this information about this specific investigation,

23   because if Mr. Levison's concern, his First Amendment concern

24   is investigations broadly, Your Honor has seen warrants like

25   this one before.  There is not a lot that is necessarily unique

8                                                                          24

1   to this attachment that could be talked about if you wanted to

2   talk about criminal investigations generally, but I think what

3   that interaction or discussion illuminated is that Mr. Levison

4   wants to talk about the scope of this particular investigation,

5   but the scope of a particular investigation while that

6   investigation is still pending is something that the government

7   can lawfully ask the Court to seal.

8            That's the case law that is cited in our response and

9   has been plain, I think, for a long time, and it is incredibly

10  routine.  The government's not asking that this information be

11  sealed indefinitely.  It's only asking that the information be

12  sealed while the investigation is pending, because if that

13  investigation is disclosed at that time, it could damage the

14  investigation.

15           As the investigation concludes or at some other time,

16  Mr. Levison may after the appropriate order is entered be

17  allowed to discuss this particular investigation.  If he wants

18  to discuss other investigations or the scope of federal

19  investigation more broadly, nothing that the Court -- no order

20  the Court enters as to this matter would prohibit him from

21  doing that.

22           All he is seeking to do at this point is disclose

23  information about the scope of an ongoing investigation, which

24  is not something that he should be able -- be allowed to do at

25  this time.

8

25

1        THE COURT:   Thank you.   I'm going to take the matter

2   under advisement.   You'll hear from me as soon as I'm able.

3   I'm going to ask the clerk to order preparation of a

4   transcript.

5        MR. BINNALL:   Thank you, Your Honor.

6        THE COURT:   Thanks to you-all.   Court's in recess.

7                         (Which were all the proceedings

8                          had at this time.)

9

10              CERTIFICATE OF THE TRANSCRIBER

11      I certify that the foregoing is a correct transcript from

12   the official electronic sound recording of the proceedings in

13   the above-entitled matter.

14

15  _____
                    /s/
16                  Anneliese J. Thomson

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MAY – 6 2014

In re: Search Warrant Issued to Lavabit, LLC    )
    )
    )    Case No.  1:13sw569
    )
    )    UNDER SEAL

<u>ORDER</u>

For the reasons stated in the memorandum opinion filed today, and to the extent stated

therein, petitioners' motion (no. 19) to unseal certain portions of the record herein is GRANTED.

This decision is STAYED for 14 days pending the government's decision whether to

appeal.

The parties shall complete their review of the hearing transcript and report to the court

within the stay period.

It is so ORDERED.

_____/s/_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
May 6, 2014

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MAY - 6 2014

In re: Search Warrant Issued to Lavabit, LLC    )
                                                 )
                                                 )    Case No.  1:13sw569
                                                 )
                                                 )    UNDER SEAL

## MEMORANDUM OPINION

On April 1, 2013, this court issued a search warrant pursuant to Fed. R. Crim. P. 41 and 18 U.S.C. § 2703 for certain records relating to one or more email accounts at Lavabit, LLC. On December 13, 2013, Lavabit, LLC and its owner, Ladar Levinson ("petitioners") moved to unseal essentially the entire file.[1]

The government and petitioners subsequently agreed that release of redacted copies of the search warrant, the application therefor, and post-warrant proceedings would be sufficient to resolve the dispute. They disagree on only one redaction sought by the government and opposed by petitioners.[2] Accordingly, the court now deals only with that one remaining dispute, and regards all other issues as resolved.

As is typical in § 2703 warrants, the application sought, and the court agreed to, a two-step procedure. The warrant required Lavabit to disclose certain material identified in Subsection I of Attachment B to the warrant, and allowed the government to seize from that material any matter that met the requirements of Subsection II of Attachment B.

---

[1]    Petitioners originally sought to unseal other documents as well but they are not presently in issue.

[2]    The litigation of this dispute demonstrates that citizens and their lawyers and the lawyers who represent their government can assert their positions and perform their tasks effectively and with dignity without compromising their interests, and the court appreciates that approach.

The government now agrees that Subsection I can be unsealed without damage to the government's underlying investigation. Subsection I requires that Lavabit disclose the following to the government:

> To the extent that the information described in Attachment A is within the possession, custody, or control of Lavabit, LLC (Lavabit) including any e-mails, records, files, logs, or information that have been deleted but are still available to Lavabit, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Lavabit is required to disclose the following information to the government for each account or identifier listed in Attachment A:

> a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

> b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

> c. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

> d. All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

Subsection II says that the government may seize from that body of data the following information:



> b. Evidence of the identities of the users of the account and co-conspirators and others associated with the account and the criminal activities facilitated by the use of the account;

2

> c.   *Evidence of the location of the users of the account and co-conspirators and others associated with the account, and;*
>
> d.   *Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.*

Petitioners agree that the portions shaded above may remain redacted at least for the present. They object to the government's continued assertion that italicized parts b, c, and d should remain redacted.

The government contends that this portion of Subsection II "is, in essence, a 'road map' to the government's ongoing investigation," so that "release would compromise the investigator by giving the target or targets... an opportunity to destroy evidence, change patterns of behavior, or take other efforts to avoid discovery...." *Id.* At 4 (citing *Media General Operations, Inc. v. Buchanan*, 417 F3d 424, 430 (4th Cir. 2005). The government says that redaction is necessary for it "to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation." Government brief (no. 20) at 4, quoting *Va. Dept. of State Police v. Washington Post*, 386 F. 3d 567, 574 (4th Cir. 2004).

Petitioners argue that "[d]isclosing that the government seeks [this information] does not reveal any new details of the government's investigation. This generic language could refer to the email records of a suspect involved in [any type of criminal activity]; it does not allude to or name specific crimes or individuals... nor is it specific enough to alert the target or any co-conspirators and allow them to hinder the investigation or hide their crimes." Petitioner's Reply Brief (no. 21) at 1-3.

The court agrees with petitioners.

While the court also agrees with, and is of course bound by, the general principles stated in the cases cited by the government, none of them justifies much less requires sealing the material presently in issue.

3

The court cannot imagine that any person related to any criminal enterprise would fail to assume that investigators were interested in the sort of information described in these subparagraphs and seek it wherever they could find it. Far from "revealing" something about the investigation, the disclosure in issue here could do no more than confirm an assumption already held. Especially where the government is already willing to make the disclosures to which it has already agreed here, the court simply cannot see a way that the present investigation will be harmed *at all*, much less severely,[3] by this disclosure.

At the hearing, the court gave the government repeated opportunities to demonstrate or even hypothesize some harm from the disclosure of Subsection II. See Trans. 2/20/14 at 6-13. As in its brief, the government simply could not provide even a hypothetical connection between the concerns it expressed and the disclosure of this portion of the warrant.

Petitioners' motion is accordingly GRANTED, and an appropriate order will issue, including a stay to allow the government to decide whether to appeal. This decision is a narrow one, based on the facts and circumstances of this particular case.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
May 6, 2014

---

[3]  Compare 18 U.S.C. §2705(a)(2)(E)which, while not controlling here, provides an appropriate analogy.